IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AUSTIN J. RAPPUHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:20-00528-JB-N |
| | ) |
| PRIMAL VANTAGE COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on Defendant, Primal Vantage Company, Inc.'s Motion for Summary Judgment (Doc. 158) and its Motions in Limine to Exclude (or Limit) the opinions and testimony of Plaintiff's experts Jahan Rasty, Ph.D, Guy Avellon, and Robert F. Brenner (Docs. 160, 162, and 164). The Motions have been fully briefed and are ripe for resolution. Upon careful consideration, and for the reasons stated below, the Court concludes that all Defendant's Motions are due to be **DENIED**.

I.     FACTS

This action is on remand from the Eleventh Circuit Court of Appeals. (Docs. 147 and 148). The facts of this case have been set out in detail in previous orders of this Court and the Eleventh Circuit (Docs. 140 and 147), which are incorporated herein.

Plaintiff, Austin Rappuhn, filed this action to recover for injuries he sustained while using Defendant's Primal Vantage PVCS-400 tree stand on November 17, 2018. (Doc. 1). Defendant designed, manufactured, produced, and distributed the tree stand. Plaintiff asserts claims for

negligence, violation of the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), and wantonness.

The PVCS-400 is a climbing tree stand used for hunting at an elevated position in a tree. The tree stand has a foot platform and a seat platform. Both platforms are moved independently up or down a tree in an "inchworm" like motion. The tree stand is attached to a tree by steel cables provided with the tree stand. The ends of the cables have a loop end that is inserted into the tree stand frame. "Quickclips" are inserted into holes on the sides of the platforms to secure the cables around the back of the tree. A Quickclip is a spring steel clip that utilizes a coupler-style latching mechanism, whereby the Quickclip's latch is fastened to its pin. The cable loops for each side of the platforms are secured to the side of the platform using four Quickclips. To remove the platforms from the tree, the user removes the securing steel cables by unlocking the Quickclips.

The tree stand is packaged with written warnings and instructions, a full body safety harness, and a warning label. A safety manual provided with the tree stand warns users to wear the safety harness at all times after leaving the ground:

> **ALWAYS** wear a Fall Arrest System (FAS) (Harness) consisting of a full body safety harness after leaving the ground." … You MUST stay connected at all times after leaving the ground while using climbing and hang-on treestands.

(Doc. 120-3 at PageID.1860 (emphasis in original)). Users are instructed to make frequent adjustments to the safety harness and to remain attached to the tree. (*Id.* at PageID.1870 and Doc. 120-4 at PageID.1876). "Climbing Instructions" provided with the tree stand state:

> Before beginning to climb: Check that your harness is secure, check that cables are properly quick clipped, and make sure that the seat straps on your seat section are off to the side, they should not obstruct the cable connecting to the tree in anyway while climbing. Practice at ground level with your Full Body Harness.

> Familiarize yourself with this product's function so you feel comfortable with the climbing procedure.

(Doc. 120-3 at PageID.1869).

Plaintiff used the tree stand on a hunting trip with his father in November 2018. Plaintiff and his father split up and selected different trees from which to hunt. Plaintiff set up his tree stand, as he had done several times before, and began to climb a tree. As he was scaling the tree with the tree stand, he heard a popping sound and felt something break free. Plaintiff fell to the ground from a height of around seven feet, and became unconscious. When he regained consciousness, he found himself face down in the mud with the seat platform wrapped around him. Plaintiff could not move and called for his father. His father arrived, called 911, and noticed that the foot platform was still attached to the tree. His father found one of the Quickclips on the ground by Plaintiff and saw that the top platform's securement cable had come out of the frame on the right side of the tree stand. Plaintiff was taken to the hospital, where he learned he was permanently paralyzed from the chest down.

Plaintiff alleges a Quickclip disengaged while he was climbing the tree, causing his fall and injuries. He claims the tree stand was defective and unreasonably dangerous, and was negligently and wantonly designed by Defendant. Plaintiff also contends Defendant should have used an available safer alternative to secure the cables that hold the tree stand to the tree. Supported by proffered expert testimony, of Avellon especially, Plaintiff argues safer alternatives to Quickclips included fasteners that are incapable of disengaging while in use, such as hex and carriage bolts attached with wing nuts or knobs. These alternatives lack "false-latch" scenarios, which are attendant to the use of Quickclips and make the tree stand unreasonable dangerous.

## II. ANALYSIS

By Order dated December 7, 2022, this Court granted summary judgment in favor of Defendant, having excluded portions of Avellon's and Rasty's opinions and concluding that there was no genuine dispute of material fact as to defective design and causation. (Doc. 140). The Eleventh Circuit reversed both the decision to exclude Plaintiff's expert testimony and the grant of summary judgment. (*Id.*).

Following remand, Defendant re-filed its identical motions for summary and to exclude or limit Avellon's and Rasty's opinions. Defendant offers no new evidence or argument. It does not account for the Eleventh Circuit's opinion reversing this Court's prior grant of the motions. Upon careful review of the Eleventh Circuit Order, the Court finds that it controls Defendant's re-filed motions.

The Eleventh Circuit recounted the opinions of Avellon and Rasty. (Doc. 147). Avellon "investigated the different design options for tree stand fasteners and their relative safety and utility," and opined "the Quickclip is a relatively unsafe fastener choice for a tree stand because the pin is too long and not tight to the frame, the stiffness of the latch spring is variable, and the open-ended design makes the Quickclip capable of disengaging." (*Id.*). He concluded "the tree stand was defectively designed because there was no way to verify if the Quickclip was properly fastened before a user begins to ascend a tree." (*Id.* (quoting the Court's Order (Doc. 140)). Avellon testified that, "[a]s designed, there are no mechanical means or warnings provided to assure the Quick Clip is *properly* fastened before a user begins to ascend a tree." (*Id.*). He concluded there are not "'physical means' to ensure the cable is 'locked in position,'" though he

testified in his deposition that "a user could 'visually' detect whether a Quickclip was 'properly closed' by looking at it." (*Id.*).

Avellon further opined "that safer fastener designs like a nut-and-bolt design were feasible, practical, and readily available." (*Id.*). These alternative designs, according to Avellon, "are safer because they have a tighter fit than a Quickclip; do not have an open-ended design that can cause false-latch scenarios; and must be screwed in, preventing unexpected disengagement while in use." (*Id.*).

The Eleventh Circuit reviewed the following aspects of Rasty's opinions, including causation. (Doc. 147). Rasty "investigated what may have caused the [tree stand] to detach from the tree." (*Id.*). He concluded it "most likely detached because a Quickclip disengaged under a false-latch scenario." (*Id.*). Rasty opined a "Quickclip may appear fastened when it is not and thus can disengage when the tree stand's user is climbing the tree." (*Id.*). The Eleventh Circuit confirmed Rasty "performed tests to evaluate this theory." (*Id.*). "Although he didn't perform any tests with a heavy load on the tree stand, he explained that the presence of a heavy load on the tree stand wouldn't change his test results or conclusion. Specifically, he said that any load would be perpendicular to the force he was testing and would make a minimal difference in the likelihood of the tree stand coming unlatched." (*Id.*).

The Eleventh Circuit reversed this Court's exclusion of the opinions of Avellon and Rasty. The error, the Eleventh Circuit explained, arose from this Court's confusion of credibility with reliability and admissibility. The Eleventh Circuit set out the applicable standard under *Daubert*:

> The inquiry under *Daubert* is not whether the expert's assessment is incontrovertible. "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,

5

161 F.3d 77, 85 (1st Cir. 1998). The reliability inquiry is about the principles and methods the expert used, not whether the expert has provided credible testimony. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590; *McCorvey* [v. Baxter Healthcare Corp.], 298 F.3d [1253,] 1256 [11th Cir. 2002]. Instead of excluding an expert's testimony entirely, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain the preferred "means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

(Doc. 147 at p. 10).

The Eleventh Circuit applied this standard and conducted the evidentiary analysis. It held this Court erred by excluding "Avellon's opinion about whether a Quickclip allows a user to confirm that it is closed." (*Id.*). The issue relating to Avellon was a perceived inconsistency between his opinion about a user's inability to detect whether a Quickclip was properly closed and his deposition testimony. The Eleventh Circuit found, "[e]ven if a jury could find some inconsistency between Avellon's report and his deposition that might undermine his testimony at trial, that credibility question is one for the jury to answer." (*Id.*).[1]

The Eleventh Circuit found this Court "made the same kind of errors in its assessment of Rasty's testimony." (Doc. 147). Regarding Rasty's testing and opinion on causation, the Eleventh Circuit concluded:

> The district court excluded Rasty's causation testimony in part because Primal Vantage's expert testified that a user weight load would make a difference in the force it would take to release a Quickclip, meaning—in the district court's view—Rasty's opinion was not credible because he didn't perform his test on the tree stand with a user weight load. Based on these findings, the district court concluded that Rasty's testimony was unreliable.
>
> This analysis—crediting one expert over another—misapplies *Daubert* and intrudes on the province of the jury. We have held that "a district court may not

---

[1] The Eleventh Circuit found Avellon's opinion that there are not "mechanical" or "physical" means to verify proper closure of Quickclips is "not, in fact, inconsistent" with his deposition testimony that a user could visually determine proper closure. (Doc. 147 at p.9).

> exclude an expert because it believes one expert is more persuasive than another expert." *Rink* [*v. Cheminova, Inc.*], 400 F.3d [1286], 1293 n.7. In opposition to the view of the defendant's expert, Rasty explained in his deposition why testing with a user weight load didn't matter and wouldn't have changed his opinion. The comparison of the testing done by Rasty and the defendant's expert goes to credibility, not reliability. As we've explained, "objections to the inadequacies of a study are more appropriately considered" as "going to the weight of the evidence rather than its admissibility." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)) (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003)). Typically, the "failure to include variables" in an expert's testing "will affect the analysis'[s] probativeness, not its admissibility." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1346 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).
>
> The district court committed the same error when it discounted the weight of Rasty's testimony on the ground that it contradicted Rappuhn's testimony that the tree stand was latched when he started climbing. There may, or may not, be some inconsistency between Rappuhn's recollection of what he saw and what Rasty believes caused the accident. But a district court cannot limit an expert's testimony or grant summary judgment by crediting one witness over another.

(Doc. 147 at p.7).

The Eleventh Circuit next addressed this Court's conclusion "that there was no genuine issue of material fact as to defective design and causation," and its resulting grant of summary judgment. (Doc. 147). The Eleventh Circuit concluded the excluded opinions of Avellon and Rasty "would have created a genuine issue of material fact." (*Id.*).

The Eleventh Circuit also reversed on the issue of Plaintiff's alternative designs. In particular, the Eleventh Circuit reversed this Court's conclusion that, "even if there were substantial evidence of causation, [Plaintiff could not] establish that his injuries would have been eliminated or reduced with an alternative design unless that alternative design is resistant to all user error." (*Id.* at p. 13). Rather, the Eleventh Circuit explained, "[t]o prove a safer alternative design under Alabama law, a plaintiff must establish that (1) his injuries would have been

7

eliminated or in some way reduced by the alternative design and (2) the utility of the alternative design outweighed the utility of the design actually used." (*Id.* (citing *Hosford v. BRK Brands, Inc.*, 223 So. 3d 199, 203 (Ala. 2016)). The Eleventh Circuit found "[o]ne way [Plaintiff] could meet his burden under the first element is by *establishing* that an alternative design—such as his proposed nut-and-bolt design—has a lower risk of user error and device failure such that his injury wouldn't have occurred if it had been used." (*Id.*). Avellon opined that the alternative designs "are safer because they have a tighter fit than a Quickclip; do not have an open-ended design that can cause false-latch scenarios; and must be screwed in, preventing unexpected disengagement while in use." (Doc. 147). Citing *Gen. Motors Corp. v. Edwards*, 482 So. 2d 1176, 1189 (Ala. 1985), the Eleventh Circuit noted the "critical question is whether, under all of the surrounding circumstances, a manufacturer has created an unreasonable risk of increasing the harm in the event of the statistically inevitable" accident. (*Id.* (quoting *Curtis v. Gen. Motors Corp.*, 649 F.2d 808, 812 (10th Cir. 1981))), overruled on other grounds by *Schwartz v. Volvo N. Am. Corp.*, 554 So. 2d 927 (Ala. 1989), as recognized in *Haddan v. Norfolk S. Ry. Co.*, 367 So. 3d 1067 (Ala. 2022)).

Upon careful review of the Eleventh Circuit order (Doc. 147), and for the reasons set out herein, the Court concludes Defendant's re-filed motions to exclude or limit the testimony of Avellon and Rasty are not well taken. Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" is the preferred "means of attacking shaky but admissible evidence." (Doc. 147 at p. 10 (quoting *Daubert*, 509 U.S. at 596)).

For the same reasons, and for those set out in Plaintiff's Response in Opposition (Doc. 171), the Court finds Defendant's Motion to Exclude (or Limit) the Opinion and Testimony of Robert F. Brenner (Doc. 164) is due to be DENIED.

8

Finally, supported by the opinions of his experts Avellon and Rasty, the Courts finds Plaintiff has demonstrated genuine issues of material fact which preclude the entry of summary judgment. (Doc. 47 (noting the excluded "expert testimony that would have created a genuine dispute of material fact."). Defendant's re-filed Motion for Summary Judgment is due to be DENIED.

## CONCLUSION

Upon careful review, Defendant's Motion for Summary Judgment (Doc. 158) and its Motions in Limine to Exclude (or Limit) the opinions and testimony of Plaintiff's experts Jahan Rasty, Ph.D, Guy Avellon, and Robert F. Brenner (Docs. 160, 162, and 164) are **DENIED**.

**DONE and ORDERED** this 5th day of January, 2026.

/s/ JEFFREY U. BEAVERSTOCK  
CHIEF UNITED STATES DISTRICT JUDGE